FILED
U.S. DISTRICT COURT
DISTRICT OF COLORADO

2022 AUG 16 PM 4: 07

JEFFREY P. COLWELL
CLERK

BY_____DEP. CLERK

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No.

SALLY THOMPSON d/b/a SEW LIKE A ROCKSTAR,

Plaintiff,
v.

MARGARET PARSONS, DIANA PRIEBE,
CANDY STAELENS, and BARBARA RUSSELL,

Defendants.

---

## COMPLAINT

---

Plaintiff, Sally Thompson, an individual and d/b/a Sew Like a Rockstar, a sole proprietorship, ("Plaintiff"), files this Complaint and in support thereof states as follows:

### JURISDICTION

1.      The Plaintiff, at all times relevant to this Complaint, was and continues to be a resident of Douglas County, Colorado.

2.      Defendant Margaret Parsons ("Parsons"), at all times relevant to this Complaint, was and continues to be a resident of Idaho and an active co-conspirator to the allegations described below.

3.      Diana Priebe ("Priebe"), at all times relevant to this Complaint, was and continues to be a resident of Michigan and an active co-conspirator to the allegations described below.

4.      Defendant Candy Staelens ("Staelens"), at all times relevant to this Complaint, was a resident of Michigan but is now a resident of Arizona.

5.      Defendant Barbara Russell ("Russell"), at all times relevant to this Complaint, was and continues to be a resident of Arizona.

6.      This Court has Diversity Jurisdiction as the Plaintiff resides in Colorado and no Defendant resides in Colorado.  Moreover, the amount in controversy exceeds $75,000.00 per 28 USC §

1332).  Further subject matter jurisdiction is appropriate per 28 USC § 1332 as this Complaint includes claims for relief for violations of several Federal Statutes.

7.      Personal jurisdiction is appropriate over the out-of- state Defendants through the operation of Colorado's Long Arm Statute (CRS § 13-1- 124).  These defendants, in furtherance of the conspiracy claimed below, have committed a number of criminal acts within the State of Colorado.  Moreover, in furtherance of the aforementioned conspiracy, these Defendants transacted business and committed tortious and acts within the State of Colorado.  The crimes and torts committed in Colorado give this Court specific personal jurisdiction over the conspirators.

8.      Moreover, this Court has general personal jurisdiction as the conspirators have created and maintained several websites and webpages solely dedicated to destroying Plaintiff's Colorado based business.  Further, the conspirators knew that the Plaintiff and her business were located in Colorado and threatened that they were coming to Colorado to physically harm the Plaintiff.  Such threats were so credible that the Department of Homeland Security had agents at Denver International Airport ready to arrest several conspirators as they had threatened that they were coming to Colorado on specific airline flights on specific dates.

## CONSPIRATORS

9.      As will be delineated further below, the following individuals and entities constitute a partial list of the conspirators which will be discussed in further detail below and include but are not limited to:  Julie Crooks; Margaret Parsons; Diana Priebe; Candie Stalens; Barbara Russell; Kathy Rees; Julie Vanderhoek; Kelly Cutler; "Wendy Sampson"; "Sharon Tilley"; "Natalie Evans"; Brittany Jansen and others too numerous to name herein.  The followers and "reach" of the conspirators includes many hundreds of thousands of followers.

10.     According to the conspirators, the stated goal of the conspiracy was to ruin the Plaintiff's livelihood and reputation by any means necessary including the commission of multiple criminal actions in furtherance thereof.  Julie Vanderhoek (going by the screen name of Julzcanuck) stated the following:



11.    Conspirator Brittany Jansen encapsulated the stated goal of the conspiracy in a somewhat more concise manner:



12.    And finally, in conspirator Rees' own words:



## BACKGROUND FACTS

13.    Plaintiff is a seamstress who has operated a highly successful business selling patterns, zippers, and threads on a website known as "Sewmuchnicer.com" ("SMN"), craftsy.com. etsy.com, and bionicgearbag.com. These websites operate to allow interested persons to purchase products and materials as advertised thereon.

14.    The Plaintiff sought to launch an internet membership site for persons interested  in paying a single fee to download original patterns, instructions, and to watch pre-recorded sewing videos which assist customers in completing the various projects. The  new website would be known as "Sewlikearockstar.com" ("SLARS"). Much of the tortious activity discussed below developed secondary to Plaintiff's attempts to launch  the SLARS site. It was learned much later that defamatory attacks had been taking place on other pages and sites as early as summer 2016.

15.    Plaintiff has built several large and loyal followings on certain Facebook  Pages and Groups owned and controlled by her, including SLARS and SMN. Through these (and other) Facebook Pages, Plaintiff was able to reach a large number of individuals (hundreds of thousands), create a following, collect their email contact information, and foster ongoing businessrelationships pertaining to her wares.

16.    Over the years, the Defendants and conspirators have made multiple complaints pertaining to Plaintiff's service both directly to the Plaintiff and also on other Facebook Pages and Groups and other internet sites pertaining to similar sewing activities. However, Plaintiffwas

not of the opinion that such minor complaints were anything other than a common occurrence of such business activities and the Plaintiff worked hard to satisfy all such customers.

17.     For reasons unknown, in June 2016, a Facebook Page called "Zip it Together" was created by conspirator Kelly Cutler, CEO of Kona Company. Ms. Cutler is an accomplished computer programmer and happens to own a sewing website known as "sewingmamas.com." The purpose of this page was specifically designed to "assist dissatisfied customers" obtain refunds from the Plaintiff.

18.     The Plaintiff does not know Ms. Cutler and has never done business of any sort with this conspirator.   Regardless, as stated before, the very few refund requests which were received by the Plaintiff were processed fairly and correctly.  Perplexingly, the Plaintiff has never had a "refund problem" with all refunds handled professionally and expeditiously.

19.     In September of 2016, the internet site Craftsy.com altered their website in such a way as to make it substantially more difficult for individual merchants like the Plaintiff to make a profit through the site. As such, Plaintiff determined that it would be in the company's best interests to create its own website to increase sales and exposure to the public.

20.     In October of 2016, another Facebook Group was created dedicated solely to "collecting evidence" on Plaintiff's sales activities.   This Facebook Page was named exactly the same as Plaintiff's Facebook Page – "Sew Much Nicer Community." Plaintiff submits that this was done intentionally to create confusion and to try to lure Plaintiff's loyal fanbase to this page which was replete with lies and defamatory content.

21.     The identities of these conspirators will be discerned with properly served subpoenas on the social media pages (Facebook, Instagram, Etsy, etc.)

22.     Every moderator and administrator profile that was part of the group proved to be a fake identity and upon Plaintiff's notification of this fact, Facebook disabled the  fake accounts. However, the page (and the defamatory content thereon) remains observable to this very day as the fake profiles who were running the Page have all been deleted. Regardless, it was not lost on the Plaintiff that two Facebook Pages dedicated to the sole purpose of causing harm to Plaintiff's business had been created in a matter of four months.

23.     Again, the identities of these conspirators will be discerned with properly served subpoenas on the social media pages (Facebook, Instagram, Etsy, etc.)

24.     More recently, other Facebook Pages and websites have been discovered dedicated solely to defaming the Plaintiff personally and with the specific intent of harming her business. The following examples are not intended to be an exhaustive list of such pages: Sew Much Nicer Refund Help; Much Nicer Refund Help; Island Babe Rocking; Blue Diamond.250; Sew Crazy 4 Bags; Slap_Me_Please_99; Free Speech; and sewing wars.  These sites are active to this day.

25.     Again, the identities of these conspirators will be discerned with properly served subpoenas on the social media pages (Facebook, Instagram, Etsy, etc.)

26.     In truth, the Plaintiff has been able to identify close to 30 such websites or pages dedicated solely to attempting to destroy the Plaintiff's business and harm her personal reputation.

27.     As recently as August of 2022, the conspirators have republished nearly all of the defamatory comments and materials dedicated to harming the Plaintiff and her business through the creation of a new website dedicated solely to harming the Plaintiff.

28.     Taking a step back in time, in November of 2016, the Plaintiff was approached via Facebook by one Kathy Rees ("Rees"). Conspirator Rees is a resident of the country of Australia and unbeknownst to the Plaintiff, Conspirator Rees had pre-existing personal relationships with other conspirators, including Russell and Crooks.

29.     In December of 2016, Rees approached the Plaintiff and offered her services as a web designer to assist the Plaintiff in creating her own website, SLARS, through which Plaintiff could market her goods and services to her fanbase. Also, Plaintiff intended to use the site as a vehicle to vastly expand her fanbase and to make relationships with other larger internet  sewing businesses. Ms. Rees was paid over $7,000.00 within three months of launch to provide management and control of the site, customer service and to be Plaintiff's assistant following the January 1, 2017 launch.

30.     Between January 1 and 12, the site would not work due to the deliberately destructive work of conspirator Rees. Conspirator Rees blamed the registrar and hosting companies while promising  to  get everything worked out within "a day or two."

31.     On January 12, 2017, the Plaintiff was frustrated that the site was not working properly and contacted the hosting company personally.   A representative was able to fix everything on the phone in a matter of minutes.   It was later learned that Conspirator Rees had never contacted the hosting company to attempt to resolve the issues herself.

32.     Due to a number of similar instances over the following couple of months and due to the fact that Conspirator Rees had become non-responsive, Plaintiff terminated Conspirator Rees by the end of March 2017.

33.     Plaintiff undertook efforts to change all necessary passwords and codes so that (it was believed) Conspirator Rees would no longer be able to access the system, the website, any of the Facebook Pages, and all related sites (Dropbox, Instagram, Vimeo, YouTube, etc.).

34.     Despite these efforts to mitigate her damages, by April 2017, the site was totally non-functional.

6

35.    Subsequent to her termination, conspirator Rees regained access to Plaintiff's website, web services, and personal computers located in Colorado.  Subsequent to her termination, conspirator Rees accessed the aforementioned and destroyed and deleted property owned by the Plaintiff.  Rees further stole and distributed .pdf sewing patterns as her own denying the Plaintiff the profits from the distribution of the same.

36.    Prior to the sabotage and criminal activity perpetuated by conspirator Rees, Plaintiff met conspirators Priebe and Staelens at a sewing "retreat" which she held in Michigan in April of 2016. It was later learned that these conspirators were personal friends of Rees.

37.    Plaintiff developed a friendship with conspirator Priebe and with a conspirator, Julie Vanderhoek, a Canadian national. ("Vanderhoek.") Plaintiff allowed conspirators Priebe and Vanderhoek to be moderators on her Facebook Group in 2016 and 2017, respectively. Shortly thereafter, Priebe and Vanderhoek made it known that they thought Plaintiff should  pay more money to conspirator Rees to fairly compensate her for her work - seemingly not understanding that the site was totally inoperable due to conspirator Rees' incompetence. Plaintiff declined to follow their advice.

38.    On May 10, 2017, an unknown conspirator was able to log into the system and change some name serversettings which disabled the site for a time.

39.    In mid-May 2017, conspirator Priebe called the Plaintiff at 2:00 a.m. and notified her that *someone* had been able to change the profile picture on Plaintiff's Facebook Page to a picture of a pair of "pants on fire." Conspirator Priebe claimed ignorance as to how that could happen.

40.    During this timeframe, conspirators Priebe and Vanderhoek began pressuring the Plaintiff to simply pay conspirator Rees more money to take care of the problems with the site. Conspirators Preibe and Vanderhoek informed the Plaintiff that conspirator Rees was going to lose her home in Australia if Plaintiff did not pay conspirator Rees more money.

41.    In mid-May 2017, it was determined that conspirators Vanderhoek and Priebe allowed multiple Facebook accounts which had been previously banned back into the Facebook forums and onto the site – including conspirator Rees. Much of this occurred on the same night that the profile picture was changed to the "pants on fire" photo. By way of explanation, conspirators Vanderhoek and Priebe claimed that they had been "hacked," although no evidence of a hack was able to be discerned after the fact by Plaintiff's professional IT and internet security consultants.

42.    On May 25, 2017, Plaintiff was able to determine through her professional IT and internet security consultants that her website host's settings had in fact been changed by conspirator Rees who intentionally caused the May 10 interruption of service of the site. Moreover, it was later discovered that conspirator Rees had again regained access to the company Dropbox account and had permanently deleted a large amount of sensitive and irreplaceable materials.  These materials were deleted not only from the cloud-based Dropbox service, but

also from Plaintiff's personal computer hard drives forever altering her Colorado based equipment.

43.     Moreover, it was determined at that time that conspirator Rees had regained access to the company Vimeo account and had damaged/deleted a great number of the sewing videos that the Plaintiff had previously produced.  These materials were deleted not only from the cloud-based Vimeo account service, but also from Plaintiff's personal computer hard drives forever altering her Colorado based equipment professional as verified by Plaintiff's IT and internet security consultants.

44.     Furthermore, it was determined that conspirator Rees had obtained a copy of Plaintiff's valuable customer list and had corrupted the master copy which Plaintiff used and relied upon. These documents were kept on Plaintiff's computer hard drives forever altering her Colorado based equipment and as verified by Plaintiff's professional IT and internet security consultants.

45.     At that time it was unclear *how* conspirator Rees had managed to log in as her permission had previously been revoked, yet conspirator Rees' IP address was associated with each of the aforementioned criminal acts as verified by Plaintiff's professional IT and internet security consultants.

46.     In June of 2017, the Plaintiff retained the services of another web designer who had to dismantle and totally rebuild the website as conspirator Rees' work *seemed* to demonstrate a complete lack of understanding of how to create such a site. In other words, the site was not fit for Plaintiff's stated purposes and conspirator Rees *seemed* completely unqualified to undertake such a project.

47.     In June of 2017, conspirator Priebe sought to have a video conference call with the Plaintiff under the pretext that they would discuss arranging a fun social evening of sewing together.  Plaintiff joined and conspirators Staelens and Vanderhoek were already on the video call. Plaintiff asked one of her employees to join the call as well. Moments later, to the surprise of the Plaintiff, conspirator Rees was allowed to join.

48.     This call was set up by conspirators Priebe, Staelens and Vandebroek specifically to give conspirator Rees a forum to demand further payments from the Plaintiff and apparently allow conspirator Rees the opportunity to attempt to blame all of the site's deficiencies on the Plaintiff.

49.     Much of this call was recorded by the conspirators.  Defendant's Priebe and Staelens have edited their footage of the Zoom call to deliberately withhold the first 45 minutes of the call. During this 45 minutes, conspirator Rees admitted to committing multiple criminal acts.

50.     After the initial shock of the fact that conspirator Rees had been allowed on the call, Plaintiff had some discussions with conspirator Rees. Conspirator Rees outrageously informed the group that Plaintiff had her email service "sanctioned for spamming" which was a total

8

falsehood. Conspirator Rees then hurled multiple other outrageous accusations of every conceivable manner of wrongdoing at the Plaintiff. When asked for even a single shred of proof of conspirator Rees' claims, Rees was unable to produce even a single document to support her claims.

51.     This entire exchange was witnessed by Plaintiff's employees who can attest to every statement made by these co-conspirators.

52.     Plaintiff accused conspirator Rees of being responsible for crashing the site on May 10, and for stealing/deleting materials from the Dropbox and Vimeo accounts, for stealing and corrupting Plaintiff's customer list, and for vandalizing the Plaintiff's Facebook Pages and causing irreparable harm to Plaintiff's personal computer hard drives located on her Colorado based computers. During this call, conspirator Rees admitted that she did indeed do all those things, and that conspirator Rees did that "out of revenge" and "retaliation."

53.     In August of 2017, Plaintiff discovered that conspirator Rees had stolen some popular patterns during Rees' brief employment. This was discovered when Defendant Priebe contacted the Plaintiff to inform her that conspirator Rees had made the pattern available on a Facebook sewing page called "Free Speech: Fabrics & Patterns Edition" ("Free Speech[1]"). The pattern was downloaded some 1,656 times in only a few minutes. Plaintiff regularly sold the pattern for $13.00. As such, this theft resulted in a known loss of nearly $22,000.00.

54.     It was later discovered that in February of 2017, conspirator Rees had placed this pattern file surreptitiously in an unrelated section of the website when Rees was still working for the Plaintiff. As the file had no legitimate purpose where it had been placed, this if further proof that conspirator Rees was anticipating harming the Plaintiff in this fashion while still gainfully employed by the Plaintiff as a contractor.

55.     It was also learned that conspirator Rees had made the pattern available through Google, Australia with an indeterminate number of downloads. As such, the value of this theft and sale of this single pattern is immeasurable as it has been distributed worldwide by the conspirators.

56.     During this timeframe, Plaintiff and her staff began to try to discern and understand precisely what was being circulated about Sew Like a Rockstar as they had received some spotty reports that the Plaintiff's sites (and the Plaintiff personally) were consistently being attacked on a number of public forums (Facebook Groups, Facebook Pages, Instagram, Twitter, and entire websites dedicated to defaming the Plaintiff as delineated above.)

57.     During the fall of 2017, it was determined that the Defendants and conspirators, and each of them, were administrators and large contributors to Facebook Pages, Facebook Groups Instagram, Twitter and websites completely dedicated to attempting to ruin the Plaintiff's

---

[1] One of the previously mentioned dedicated hate groups.

personal and business reputation. For example, conspirator Rees, the other conspirators and the Defendants created and contributed contact to a website/FB Page called "Sew Like a Puppet" among several others.

58. The conspirators and the Defendants, and each of them, began a campaign of intentionally defaming and libeling the Plaintiff through the publication of untrue, insulting, and derogatory statements and claims about the Plaintiff and the Plaintiff's business. This coordinated campaign is intended to harm the business and to prevent others from doing future business with the Plaintiff. This coordinated campaign continues to this very day.

59. The coordinated campaign has reached untold thousands or hundreds of thousands of Facebook users who are members of Facebook pages and websites dedicated to sewing and the commercial sale of products associated therewith. As the conspirators and the Defendants are themselves associated with these prominent sites and use them as platforms to reach the widest audiences possible when they post/publish defamatory content/statements regarding the Plaintiff and her business with the intent to cause the most harm possible.

60. Each Defendant and conspirator referenced hereto has created their own defamatory content; shared the defamatory of the other conspirators and Defendants; commented/liked/shared the defamatory content of the other Defendants and conspirators (further spreading the content); further spread the defamatory content through the use of other platforms and through multiple accounts; and have assisted in spreading defamatory content created by other conspirators.

61. In fact, in the summer of 2018, Rees published a "book" <u>Sewing Wars</u> which documents all of the malicious, criminal, and defamatory actions taken by Rees, the conspirators and the Defendants and reiterates multiple defamatory statements therein. The book is sold on Amazon and is touted as a "true story." The book was promoted on sewing forums by each Defendant and conspirator and most Defendants and conspirators added additional defamatory statements while commenting on the book. Outrageously, Rees used Plaintiff's stolen customer list to market this book to Plaintiff's loyal customers.

## DEFAMATION

62. By way of example, but not limitation, the following defamatory and libelous statements are directly attributable to these Defendants:

## CROOKS[2]

• Attacked the Plaintiff on Etsy in 2014 after the Plaintiff won an award for best sewing pattern. Crooks stated that the Plaintiff stole that particular pattern.

---

[2] Crooks is a defendant in a State lawsuit based on these allegations. However, her actions are attributable to all Defendants through the conspiracy.

- Crooks has used multiple accounts and online personas to attack the Plaintiff on various forums for years.

- Repeatedly cut material from Plaintiff's website to display on the Sew Like a Puppet Website (and others) to allow the Defendants and others to make statements such as: "She cannot sew, so why would anyone pay a penny for something that you can do with a friend for free, and no matter what, your friend can sew better than the dumbass scumbag extortionist. She is by far the most imbecilic piece of trash around." 9.29.18

- Repeatedly cut material from Plaintiff's website to display on the Sew Like a Puppet Website (and others) to allow the Defendants and others to make statements such as: "Yes it was free for a long time [referring to Plaintiffs' pattern]; now you get the opportunity to pay her your hard-earned money to watch her try to scam you out of more!" 9.28.18

- Posting links and statements on Sew Like a Puppet Website (and others) which take the person to the Colorado Secretary of State and the Douglas  CountyDistrict Attorneys' office stating that many of Plaintiff's customers have been ripped off and need to report it to the authorities.

- Threatening to show up at all of Plaintiff's planned and announced "coffee socials" wherein Plaintiff's followers could meet the Plaintiff individually and share information on their passion for sewing.  Crooks threatened not only to show up, but to disrupt the event in a manner which led the Plaintiff to believe that violence could ensue and ultimately resulted in the cancellation of the "coffee socials" entirely.

- Stating that the Plaintiff is "delusional" on public sewing forums.  5.16.18;

- Stating that the Plaintiff is a "malignant narcissist" on public sewing forums.  5.16.18;

- Stating that the Plaintiff is a "narcissist sociopath" on public sewing forums.  5.16.18;

- Stating that the Plaintiff is a "Narcissistic socio/psychopath…after easy prey" on public sewing forums.  5.16.18;

- Claimed that the Plaintiff "ripped off" one of her most popular sewing patterns and in fact claimed to be the original designer thereof;

- And multiple other defamatory statements made directly or in support of other derogatory statements/materials too numerous to specifically delineate herein;

- Defendant Crooks has personally committed multiple acts of Criminal Harassment (C.R.S. § 18-9-111) in furtherance of the conspiracy.  Specifically, subsections:

(c) Follows a person in or about a public place; or

...

(e) Directly or indirectly initiates communication with a person or directs language toward another person, anonymously or otherwise, by telephone, telephone network, data network, text message, instant message, computer, computer network, computer system, or other interactive electronic medium in a manner intended to harass or threaten bodily injury or property damage, or makes any comment, request, suggestion, or proposal by telephone, computer, computer network, computer system, or other interactive electronic medium that is obscene; or

...

(h) Repeatedly insults, taunts, challenges, or makes communications in offensively coarse language to, another in a manner likely to provoke a violent or disorderly response;

• Made multiple efforts to entice prosecution of the Plaintiff by perpetuating lies regarding the Plaintiff's business model directly to the Douglas County District Attorney's office.

### PRIEBE

• Promoted, published and shared links to the book "Sewing Wars" with full knowledge that the content was false, libelous, and defamatory;

• Used her Facebook credentials in an unauthorized manner to change Plaintiff's business Facebook Page's profile picture to the "pants on fire" picture;

• Endorsed defamatory statements on Free Speech concluding that the Plaintiff is a "scammer."

### STAELENS

• Promoted, published and shared links to the book "Sewing Wars" with full knowledge that the content was false, libelous, and defamatory;

• Endorsed and spread the defamatory statements and materials produced by others, including the other Defendants, hereto;

• Made public and false statements that Plaintiff and her business was in the possession of and utilizing stolen equipment;

• Likely destroyed evidence in this matter, particularly the aforementioned recorded Zoom conversation.

### RUSSELL

• Making false and defamatory statements regarding treatment of dissatisfied customers are shamed and condemned for inquiring about how to rectify such problems;

- Implying that Plaintiff is lying to her customers stating: "I'm so sick of all the crap that rolls out of her mouth/mouthpiece;"

- Participated in promoting and endorsed defamatory statements which state thatthe Plaintiff: "…preys on the vulnerable ones that don't know what she's doing…" and "…she earns no respect from anyone except those who believe her lies;"

- Disseminating defamatory statements that the Plaintiff has created "charity donation fraud schemes" and that the Plaintiff "incriminates" herself in her sewing videos;

- Making false and defamatory statements that the Plaintiff is a "scammer" and "bamboozles" clients while taking their money;

- Calls the Plaintiff "the Jim Jones of the sewing world…"

- Participated in threats of physical violence to the Plaintiff (with Rees and Vanderhoek) which threats were credible enough that Immigration and Customs Enforcement Officers awaited the arrival of the flight that these conspirators let beknown that they would be on. These threats were credible enough that a Coloradosewing store cancelled a scheduled appearance by the Plaintiff out of fear for customer safety;

- Actively promoted products made by Rees from a pattern stolen from the Plaintiff;

- Participated in promoting defamatory statements that Plaintiff employs "diversionary tactics" to avoid refunding money and that "PayPal is aware of [Plaintiff's] scams;"

- Made false and defamatory statements that the Plaintiff needs to "be stopped frombilking money from people;"

- Made false and defamatory statements that the Plaintiff "continues to pull this scam on people…"

- And multiple other defamatory statements made directly or in support of other derogatory statements/materials too numerous to specifically delineate herein.

## PARSONS

- Made false and defamatory statements regarding the Plaintiff and her business such as : "We might have to accept that we were taken. Screwed, blued and tattooed;"

- Is the alter ego online personas of Wendy Sampson, Sharon (and Rob) Tilley, and Natalie Evans as determined by Plaintiff's IT and internet security consultants;

- Participated in multiple conversations indicating that conspirators were intending to show up at Plaintiff's scheduled events specifically to cause the Plaintiff serious bodily harm;

- Launched or participated in the execution of a DDOS attack on the Plaintiff's website over late 2017 and early 2018 as determined by Plaintiff's IT and internet security consultants. These are serious criminal acts as described below;

- Repeatedly monitored the DDOS attack along with the Tilley, Sampson, and Vanderhoek conspirators during the periods of attack as determined by Plaintiff's IT and internet security consultants.  These are serious criminal acts which violate multiple federal statutes;

- Subsequent to Plaintiff once again rebuilding an active website, Parsons attempted to gain access thereto under a fake identity (Maggie Janes) which was discovered on PayPal when the Maggie Janes identity paid for a subscription with Margaret Parsons' credit card;

- Knew unequivocally that the Plaintiff's business was located in Colorado through direct conversations with the Plaintiff and through her attempt to gain access to the newly constructed website under the Maggie Janes identity.  Her credit card statement delineates a Colorado business with a Colorado phone number to contact the vendor.  Moreover, this Defendant assisted the Plaintiff relocate from Utah back to Colorado during the conspiracy;

- Posted false reviews of the book "Sewing Wars" previously discussed (along with conspirator Vanderhoek):



## CRIMINAL ACTIVITY

63.     In addition to the wrongdoing and intentional pattern of actions designed to defame, libel and otherwise harm the Plaintiff and her business, the conspirators and Defendants, and

each of them, did conspire to commit multiple violations of state and federal law in furtherance of their conspiracy.

64. All Defendants and conspirators have been in constant contact with Rees and Vanderhoek through their memberships to the private Sew Like A Puppet Facebook("SLAP") and multiple other internet pages and sites. It was through this membership that the conspirators and Defendants participated in, coordinated with, assisted in the commission of, and otherwise were a part of multiple criminal actions taken by the Defendants and conspirators as was able to be discerned after the fact by Plaintiff's professional IT and internet security consultants.

65. As previously discussed, conspirators Staelens, and Priebe were administrators on Plaintiff's website and Facebook pages during the time frame when conspirator Rees was able to penetrate the security systems and steal copyrighted patterns and instructions as well as the Plaintiff's valuable client list. It was during this time that Rees physically deleted and altered Plaintiff's computers and storage devices located in Colorado as was able to be discerned after the fact by Plaintiff's professional IT and internet security consultants.

66. As conspirators Staelens and Priebe were close friends with conspirator Rees (unbeknownst to the Plaintiff during the relevant time frame) and as these thefts and property destruction occurred on these conspirators' watch, these conspirators did in fact assist in the commission of these crimes by allowing Rees access to the system as was able to be discerned after the fact by Plaintiff's professional IT and internet security consultants.

67. The loss of these valuable items has caused incalculable damage to the Plaintiff. The single release of one of Plaintiff's patterns on a public Facebook group resulted in *known* losses exceeding $22,000.00. ALL Defendants and conspirators were aware of the theft and the dissemination of such stolen goods.

68. This act alone constitutes theft within the meaning of C.R.S. § 18-4-401, *et seq.* As the value of the stolen material exceeds $20,000.00 the theft constitutes a Class 4 felony. As this loss is the only one currently known to the plaintiff, the value may later be determined to qualify as higher-class felonies.

69. All SLAP members (the Defendants and each conspirator delineated herein) who helped distribute the stolen patterns or who kept copies of the stolen patterns have committed theft by receiving in violation of C.R.S. § 18-4-404.

70. Defendant Crooks committed multiple acts of Criminal Harassment in violation of C.R.S. § 18-9-111, as fully discussed above. All Defendants and conspirators are responsible for these actions as a matter of law as though they had personally committed them.

71. These Defendants and conspirators had advance notice of and coordinated with the computer hackers (believed to be Defendant Parsons) who launched a DDOS attack on Plaintiff's website during Christmas of 2017 which attack continued into the new year.

72.     An internet pseudonym "Wendy Sampson" began making threats of just such an attack to the Plaintiff and her staff nearing Christmas of 2017. The "Wendy Sampson" persona was a member of SLAP and was "friends" with all the conspirators, Rees and Vanderhoek. "Wendy Sampson" was intimately associated with the Defendants as these Defendants were notified immediately by "Wendy Sampson" after contacts with the Plaintiff.

73.     Margaret Parsons specifically remained in constant contact with "Wendy Sampson" preceding, during and after the launch of the DDOS attack. Defendant Parsons made regular reports to the Defendants and other members of SLAP throughout the process. Finally, records demonstrate that Defendant Parsons "monitored" the DDOS attack as it was in progress. Taken as a whole, this is strong evidence that Defendant Parsons is in fact the Sampson, Tilley and Evans personas as was able to be discerned after the fact by Plaintiff's professional IT and internet security consultants.

74.     During the DDOS attack Plaintiff asked Defendant Parsons "why she was doing what she was doing"; to which Defendant Parsons responded, "Only the shadow knows."

75.     Defendants and the conspirators, and each of them, committed criminal violations of 18 USC §1030[3] which prohibits "Fraud and related activities in connection with computers." Specifically, the Statute criminalizes hacking with resultant harm and attacks such as the DDOS attack launched by the Defendants and conspirators. All Defendants and conspirators are responsible for these actions as a matter of law as though they had personally committed them.

76.     Plaintiff seeks redress for these criminal offenses through the civil remedy provisions of this criminal statute

77.     The DDOS attack launched by Defendants and conspirators was devastating. The attack completely crippled the website during the most profitable time of the year (the holiday season.) The Plaintiff has been forced to expend many tens of thousands of dollars to both return the website to viable conditions and to integrate security programs, procedures and protocols more aptly suited to NASA than to a sewing website.

78.     As previously mentioned, the Defendants, and each of them, have continued their campaign of spreading and publishing deliberately defamatory and libelous content throughout industry websites and Facebook Pages with many thousands of followers. As such, the breadth of the publication of this defamatory content may have reached a million users, or more. The causes of action and damages therefrom stemming from these criminal actions and from the defamation *per se* is discussed more fully below.

79.     Finally, as previously stated, much of the defamatory and harassing web content has been republished by conspirator Rees as discovered by the Plaintiff in August of 2022.

---

[3] The Computer Fraud and Abuse Act

## FIRST CLAIM FOR RELIEF
### *Defamation/Libel Per Se – All Defendants*

80.     Plaintiff incorporates the allegations contained within paragraphs 1-79 above as though fully set forth herein.

81.     The aforementioned defamatory written statements were all directly published to hundreds and sometimes thousands of third parties and thereafter published to many more due to the way social media platforms disseminate posts and pictures which are "liked" or shared between users and groups.

82.     Each statement, and each endorsement, cross endorsement, "share", and further publication thereof, constitute separate and additional individual torts of defamation. The aforementioned defamatory and libelous statements are merely the "tip of the iceberg" so to speak and undoubtedly, additional tortious libels will be uncovered in discovery which individual torts will necessarily be added to this action.

83.     The aforementioned defamatory libelous statements were intended to affect and did infact affect Plaintiff's business and business relations. Moreover, most of the aforementioned defamatory and libelous statements were published to social media groups which members are similarly in Plaintiff's trade and which further contain many of Plaintiff's current and former customers.

84.     The aforementioned defamatory and libelous statements include but are not limited to false statements of fact that the Plaintiff: defrauds her customers; engages in criminal activity in the furtherance of her business; has mental health conditions which preclude her from professionally running a business; is dishonest with her customers; defrauds her creditors; has no sewing skills or knowledge; is in dire criminal legal trouble; and many more similar statements.

85.     Each and every such statement is devoid of proof or facts which would support such statements at all.

86.     Although Defendants' and the conspirators' defamation/libel is plainly *per se*, and damages are presumed, Plaintiff can demonstrate specific special damages as well. As a direct cause and natural consequence of Defendants' and the conspirators' ongoing campaign of intentional defamation, Plaintiff has suffered: economic losses; lost business opportunities; damage to her reputation; lost sales revenue and income; damage to her health and wellbeing; and non-economic damages in an amount to be determined by a jury.

## SECOND CLAIM FOR RELIEF
### *Civil Conspiracy – All Defendants*

87.     Plaintiff incorporates the allegations contained within paragraphs 1-86 above as though fully set forth herein.

88.     The Defendants and conspirators, and each of them, did conspire and deliberately pursue a course of action in concert to tortiously and illegally injure the Plaintiff and her business by defaming her and by stealing/destroying valuable company resources and by improperly and illegally accessing and attacking Plaintiff's website and computer systems and committing other illegal actions as described herein.

89.     Conspirator Crooks committed multiple illegal acts within the State of Colorado in furtherance of the conspiracy.

90.     In furtherance of their tortious and illegal scheme, the Defendants and conspirators, and each of them planned a course of action to accomplish their goal of tortiously and  illegally causing injury to the Plaintiff, the Defendants and conspirators, and each of them participated in the following criminal activity:

•     Assisted and participated with conspirator Rees in illegally accessing Plaintiffs' secure website, computers and social media platforms with knowledge that  Rees intended to commit further crimes in violation of 18 USC §1030;

•     Assisted and participated with conspirator Rees in stealing valuable electronic property including but not limited to: Plaintiff's customer lists; Plaintiff's  electronic sewing patterns; and other materials currently unknown in violation of C.R.S. § 18-4-401, *et seq.*

•     Assisted and participated with Rees in disseminating the materials stolen from thePlaintiff by publication to various websites and social media in violation of C.R.S.

§ 18-4-404;

•     Assisted and participated with Rees in destroying valuable electronic media and customer data stored on Plaintiff's computers and storage devices located in Colorado in violation of 18 USC §1030;

•     Assisted and participated with conspirator Rees to "hack" into Plaintiff's website for the specific purpose of causing it to crash thereby losing sales opportunities and revenue in violation of 18 USC §1030;

•     Participated in launching and maintaining a DDOS attack against Plaintiff's website(s) in violation of 18 USC §1030; and

•     Participated in Defendant Crooks multiple criminal acts in violation of C.R.S. § 18-9-111.

91.     The aforementioned conspiracy involves conspirators other than the Defendants and the identified conspirators mentioned herein which are currently unknown to the Plaintiff. Moreover, the Defendants' and conspirators' conspiracy continues to this very day.

92.     As a direct and proximate cause of Defendants' illegal scheme and conspiracy to implement the same, Plaintiff has suffered losses, damages and harm in an amount to be determined by the jury.

### THIRD CLAIM FOR RELIEF
*Civil Theft*

93.     Plaintiff incorporates the allegations contained within paragraphs 1-92 above as though fully set forth herein.

94.     As discussed above, the Defendants, and each of them, participated in the theft of valuable company property which property was then disseminated to the public at large.

95.     Defendants have deprived and intended to deprive the Plaintiff of her use and dominion over her valuable property.

96.     As a direct and proximate cause of Defendants' theft, Plaintiff has suffered losses, damages and harm in an amount to be determined by the jury.

### FOURTH CLAIM FOR RELIEF
*Violations of 18-USC§1030 – All Defendants*

97.     Plaintiff incorporates the allegations contained within paragraphs 1-96 above as though fully set forth herein.

98.     The Defendants and conspirators, and each of them, intentionally, illegally accessed, damaged, altered and attacked computers, data stored thereon, computer systems, social media platforms, and website(s) for the purpose ofcausing harm thereto.

99.     As discussed more fully above, Defendants, and each of them, did in fact cause harm to the aforementioned computers, data stored thereon, computer systems, social media platforms, and website(s).

100.    As a direct and proximate cause of Defendants' and conspirators' intentional violations of 18-USC§1030 Plaintiff has suffered losses, damages and harm in an amount to be determined by the jury.

## FIFTH CLAIM FOR RELIEF
### *Outrageous Conduct – All Defendants*

101.    Plaintiff incorporates the allegations contained within paragraphs 1-100 above as though fully set forth herein.

102.    Defendants' and conspirators' pattern of defamatory and criminal conduct complained of above constitutes outrageous conduct.  The aforementioned pattern of conduct is so outrageous in character and extreme in degree as to exceed all possible bounds of decency and would be regarded in a civilized society as atrocious and intolerable.

103.    Defendants and conspirators, and each of them, did intentionally, maliciously, and/or recklessly, willfully and wantonly engage in the pattern of defamatory and criminal conduct complained of above for the specific purpose (among other things) of causing the Plaintiff severe emotional harm.

## JURY DEMAND

Plaintiff hereby demands a trial to a jury of six (6) on all issues so triable.

## *AD DAMNUM CLAUSE*

**WHEREFORE**, Plaintiff prays for relief as follows:

(1)         For an amount which will reasonably compensate Plaintiff for economic losses;

(2)         For an amount which will reasonably compensate Plaintiff for non-economic losses, as allowed by law;

(3)         For interests from the date of the incident, which forms the basis of this litigation, as is provided by common law, statute, or on the alternative for monetary interest;

(4)         For treble damages as allowed by law;

(5)         For punitive and exemplary damages upon future amendment hereto; and

(6)         For costs and attorneys' fees incurred in prosecuting this action and for such other and further relief as to the Court would see just.

DATED this 16th day of August 2022.

Respectfully Submitted,


__s/_Sally Thompson_____
SALLY THOMPSON
1605 Park Street, Unit C
Castle Rock 80109